STEWART, J.
|, Sustaining an exception of prescription, the trial court dismissed this action to annul a 2006 succession judgment that placed heirs into possession of immovable property located in Bienville Parish. Because the 2006 succession judgment is not a final judgment, we vacate the trial court’s judgment granting the exception of prescription and remand for further proceedings.
FACTS
On November 9, 2010, Tammy Bailiff Roy Acker (“Acker”), as succession representative for the successions of her father, Billy Gene Bailiff (“Billy”), and her uncle, Richard Leon Bailiff (“Richard”), filed this suit to annul a judgment purportedly rendered in open court on December 16, 2004, and signed in chambers on February 15, 2006, in a matter entitled “Succession of Beatrice Stewart Bailiff, LeBain Bailiff, and Willie Mae Brewster Bailiff” and hereafter referred to as the “Bailiff succession.”
*1013 Acker’s petition alleges that the Bailiff succession judgment should be declared an absolute nullity due to lack of citation and service of process, particularly as to Richard who was subject to an order of limited interdiction. Acker’s petition also alleges a number of ill practices ..as a basis for nullity. Defendants in the nullity action include Claude H, Bailiff, Jr. (“Claude”), Mae Donnelle Bailiff Dailey, Patricia Ernestine Bailiff Whatley, and Mary Ruth Bailiff Wischan. Acker’s petition also includes a claim on behalf of Richard’s succession against Claude and Randolph M. Vaughn (“Vaughn”) for damages for breach of fiduciary duty. Claude had 12been Richard’s curator since his interdiction, and Vaughn had been appointed as curator ad hoc for Richard in the Bailiff succession.
In response to Acker’s petition, Claude filed exceptions of no cause of action and prescription. Claude asserted that Acker had no cause of action to annul the judgment for lack of service or citation because Richard, through the curator ad hoc and counsel appointed for him in the Bailiff succession proceeding, had waived his right to attack the judgment by voluntarily acquiescing in the judgment and not attempting to enjoin its enforcement as provided in La. C.C.P. art. 2003. Claude also asserted that the claim for nullity based on ill practices had prescribed under La. C.C.P. art. 2004(B), which requires such claims to be brought within one year of the discovery of the fraud or ill practices.
The exceptions were heard on June 13, 2011, by the Hon. Glen Fallin, the same judge who had signed the Bailiff succession judgment which Acker is seeking to annul. The parties introduced into evidence the entire record, which included the records of the Bailiff succession proceeding and Richard’s interdiction. After hearing the arguments of counsel and Acker’s testimony about when she discovered the alleged deficiencies in the Bailiff succession proceeding, the trial court rendered an oral ruling. The trial court concluded that, due to the many mistakes found by Acker in the Bailiff succession proceeding, she stated a cause of action for nullity. However, the trial court also concluded that her nullity action had prescribed.
I sThe trial court signed a written judgment on June 13, 2011, dismissing with prejudice Acker’s claims seeking to annul the succession judgment but reserving her right to proceed on the claim for breach of fiduciary duty. In accordance with La. C.C.P. art. 1915, the trial court designated the judgment a final judgment for purposes of appeal. Acker’s appeal is now before this court for review.
DISCUSSION
Acker argues that the trial court erred in finding her nullity action prescribed. Acker seeks to annul the Bailiff succession judgment under the provisions of La. C.C.P. art. 2001 et seq., which govern actions to nullify a final judgment. A final judgment may be annulled for a vice of form, such as where a defendant has not been served with process as required by law. La. C.C.P, art. 2002. An action to annul a judgment for a vice of form may be brought at any time. La. C.C.P. art. 2002(B). An action for annulment based on vice of form is imprescriptible.' However, La. C.C.P. art. 2003 bars a “defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement” from annulling a judgment for vices of form under La. C.C.P. art. 2002.
A final judgment may also be annulled if it was obtained by fraud or ill practices. La. C.C.P. art. 2004(A). But such actions must be brought “within one year of the *1014 discovery by the plaintiff in the nullity action of the fraud or ill practice.” La. C.C.P. art. 2004(C).
|4The trial court’s judgment dismisses with prejudice Acker’s claims to annul the Bailiff succession judgment. The trial court sustained Claude’s exception of prescription, by which he asserted that Ackeris claims alleging ill practices were prescribed under La. C.C.P. art. 2004(B). The trial court denied Claude’s exception of no cause of action based on La. C.C.P. art. 2008 and by which he sought dismissal of Acker’s claims to annul the judgment for vices of form under La. C.C.P. art. 2002. As set forth above, actions for nullity under La. C.C.P. art. 2002 are imprescriptible; only actions for nullity under La. C.C.P. art. 2004 are subject to a one-year prescriptive period. Therefore, it was legal error for the trial court to dismiss Acker’s action for nullity for vices of form under La. C.C.P. art. 2002 on an exception of prescription.
As noted above, actions for nullity under La. C.C.P. art. 2001 et seq., apply to final judgments. La. C.C.P. art. 1911 requires that “every final judgment shall be signed by the judge,” except as otherwise provided by law. This has been interpreted to mean that the judge before whom the case was tried must sign the judgment. Davies v. Johnson Controls, 36,086 (La.App.2d Cir.3/14/02), 810 So.2d 1281; Louisiana Paving Co., Inc. v. St. Charles Parish Public Schools, 593 So.2d 892 (La.App. 5th Cir.1992). A judgment signed by another judge is considered invalid. Davies, supra. Moreover, the signing of a judgment by a judge who did not hear the case, and is not otherwise authorized by law to sign the judgment, is a “fatal defect.” Mullins v. Mississippi Valley Silica Co., Inc., 2008-0330 (La.App.4th Cir.3/20/08), 982 So.2d 209; Louisiana Paving, supra. Until the judge Lwho conducted the trial signs the judgment, there is no final judgment. Ourso v. Ourso, 482 So.2d 824 (La.App. 4th Cir.1986), writ denied, 484 So.2d 139 (La.1986).
Attached to Acker’s petition and introduced into evidence was the record of the Bailiff succession proceeding. The Bailiff succession petition was filed on September 29, 2004, in the Second Judicial District Court and placed on the probate docket. Judge Fallin signed an order that date setting a show cause hearing for October 14, 2004. As shown by the minutes, the show cause hearing before Judge Fallin was upset and continued without date on the motion of counsel for the succession, Jonathan M. Stewart (“Stewart”). On a motion filed December 7, 2004, the trial court appointed an attorney, Billy Rex Harper (“Harper”), to represent Richard in the succession proceeding, which was reset for December 16, 2004. The order appears to have been signed by Judge Fallin.
The minutes of December 16, 2004, show that the succession hearing came before the Hon. Jimmy Teat. The minute entry states:
The Rule for Declaration of Ownership came on for hearing as fixed. Jonathan M. Stewart, attorney for the succession; S. Judd Tooke, attorney for the defendants; Billy Rex Harper, Jr., attorney for Richard Leon Bailiff. The parties stipulated to the admission of documents and percentages of ownership. A denial was filed on behalf of Richard Leon Bailiff by curator.
The record does not identify or include any of the documents as referred to in the minutes. However, the record does include an answer filed by Vaughn, Richard’s curator, as well as an answer filed the day of the hearing by Harper, who denied the allegations of the succession petition on behalf of Richard.
*1015 | fiOver a year later, Judge Fallin signed a judgment in chambers on February 8, 2006. Referring to the hearing on December 16, 2004, before Judge Teat, the judgment states:
The Court, after a pre-trial conference, considering the documentary evidence offered by plaintiffs and the stipulation of plaintiffs and defendants is of the opinion that the law and evidence entitles the parties to a declaratory judgment finding that the property which is the subject of these successions is owned in the percentages set forth héreinbelow, and that the parties are entitled to Judgment as set forth herein, and/or the reasons orally assigned.
(Emphasis added.) The judgment recognizes the ownership of the six heirs, fixes their ownership interests, and places them into possession of the 38-acre tract of immovable property all as prayed for in the Bailiff succession petition.[1] The judgment reserves the right of the heirs to partition the property.
The prepared judgment was forwarded to Judge Fallin accompanied by a letter from Stewart. The letter, which is dated February 8, 2006, states in part:
At the trial, the parties stipulated the entry of certain records as evidence referred to in the Petition and the plaintiffs and Billy Gene Bailiff stipulated through their attorneys to the ownership as set forth in the Petition being correct.
Subsequently the parties attempted to resolve the entire matter |7at issue, including the ownership and other issues, but were unable to do so. Accordingly, I enclose a Judgment in accordance with the Court’s ruling on December 16, 2004, for your consideration and execution.
Judge Fallin addressed his signing of the Bailiff succession judgment at the hearing on the exceptions filed by Claude in response to Acker’s nullity action. Judge Fallin explained that because Stewart sent the letter to him, he did not research to determine whether it had been his case. He assumed the attorney would know which judge heard the matter. Therefore, he signed the judgment submitted by Stewart.
Review of the Bailiff succession proceedings shows that the only hearing was before Judge Teat on December 16, 2004. The minutes from the hearing do not indicate that Judge Teat made any oral ruling or took the matter under advisement. Over a year later, Judge Fallin signed a judgment on the matter that purported to reflect the ruling of the court from December 16, 2004. We must conclude that not only was the 2006 succession judgment signed by a judge who did not hear the matter, but also that the judge who heard the matter did not rule upon it. Under these circumstances, the “judgment” signed by Judge Fallin on February 15, 2006, is not a final judgment. His signing the judgment on the basis of Stewart’s representations and having not heard the matter constitutes a fatal defect that renders the purported judgment invalid.
The South ½ of the Northwest A and the South ½ of the Northeast A of the Northwest ¼ of Section 4, Township 15 North, Range 8 West, Bienville Parish, Louisiana, LESS AND EXCEPT therefrom a tract of land containing 2 acres, more or less, conveyed by Claude H. Bailiff, Sr. to Harold M. Whatley, by Deed recorded in Conveyance Book 324, at Page 90, and described as beginning at the Southwest corner of the Northeast A of the Northwest A of Section 4, Township 15 North, Range 8 West, and run North 660 feet to the point of beginning: Thence run East 140 yards, thence run South 70 yards, thence run West 140 yards, thence run North 70 yards to the point of beginning.
*1016 This ruling is in line with jurisprudence holding judgments signed by the wrong judge to be invalid and to have a fatal defect. In Ledoux v. Southern Farm Bureau Cas. Ins. Co., 337 So.2d 906 (La.App. 3d Cir.1976), Judge Joseph LaHaye tried a personal injury action, took the case 18under advisement, and then filed his written reasons for judgment in open court. However, the written judgment was signed and rendered by Judge Garland Pavy, who had not discussed the judgment with Judge LaHaye or read his reasons for judgment. When the judgment was appealed, the court determined that Judge Pavy did not have authority to render and sign the judgment and remanded for a proper judgment to be signed. The court rejected the arguments that the signing of the written judgment was merely a ministerial act, that the signing was authorized under the inherent judicial power granted under La. C.C.P. art. 191, or that the signing was authorized because Judge Pavy was the duty judge that day.
The Ledoux reasoning was followed in Louisiana Paving, swpra, where the hearing judge took the matter under advisement, issued a written opinion and requested that the attorney prepare the judgment. However, the written judgment was signed by a different judge who had not considered the merits of the case. The fifth circuit annulled the judgment and remanded for a judgment to be signed by the correct judge. The appellate court noted that the improper signing was “not a informality, irregularity or misstatement” subject to correction by the trial court under La. C.C.P. art. 2088(4). Instead, it was a “fatal defect.”
The same result was reached by the first circuit in Employers Nat. Ins. Co. v. Second Injury Bd., 95-1756 (La.App.lst Cir.4/4/96), 672 So.2d 309, and by this court in Davies, supra, both workers’ compensation cases wherein the judgments signed by judges who did not hear the matters were determined to be invalid and annulled on appeal. Also, in State v. | gWashington, 09-618 (La.App.5th Cir.12/29/09), 30 So.3d 856, the fifth circuit held a judgment on a motion to set aside heard and denied by one judge but signed by another to be an absolute nullity. None of the above cases referenced La. C.C.P. arts. 2002 or 2004 in annulling or invalidating judgments not signed by the correct judge.
In Ourso, supra, the husband in an alimony dispute sought to rely on a judgment reflecting the parties’ stipulation to a $300 support obligation. The hearing at which the stipulation was entered took place on March 30, 1983, before Judge DiRosa, but Judge Roberts signed the written judgment on May 25, 1984, after the wife had filed a new rule seeking an increase in alimony. The fourth circuit refused to allow the husband to rely on the erroneously signed judgment in opposing the wife’s alimony claim. The court found that the judgment had never been finalized because it had not been signed by Judge DiRosa. The court stated, “Until the judgment is signed by the judge who conducted the trial, there is no final judgment.”
Here, too, there is no final judgment. No judgment has been signed by the hearing judge, Judge Teat. Unlike most of the cases cited above, wherein the hearing judge either made a ruling on the record or provided written reasons, the record here does not show that Judge Teat ruled on the matter as indicated in the written judgment submitted by Stewart and signed by Judge Fallin. The facts here are more egregious than those in the cases discussed above. Here, we have the signing of a judgment by a judge who did not hear the matter and where the record shows no ruling by the hearing judge. These combined factors rob the purported *1017 final judgment of any 110indicia of reliability and mandate a finding that no final judgment has been rendered in the Bailiff succession matter.
In Bankers Ins. Co. v. State, 32,460 (La.App.2d Cir.10/27/99), 743 So.2d 870, a bond forfeiture was ordered by Judge Robert Kostelka but signed by Judge John R. Harrison. In an action to nullify the bond forfeiture judgment, the trial court ruled in favor of the plaintiff finding that the failure of Judge Kostelka to sign the judgment was a fatal defect. On appeal, this court agreed that the improper signing was a defect, but found that the plaintiff would have to prove that the judgment resulted from some ill practice under La. C.C.P. art. 2004. None of the grounds for an absolute nullity under La. C.C.P. art. 2002 applied.
Bankers, supra, which unlike this case involved a bond forfeiture judgment in a criminal matter, applied the provisions governing actions for nullity of final judgments without considering that a final judgment is one that is signed by the correct judge. Absent this necessary requirement under La. C.C.P. art. 1911, there is no final judgment. If a “judgment” not signed as required by La. C.C.P. art. 1911 is not considered a final judgment on direct appeal, it cannot be considered a final judgment simply because there was no direct appeal wherein the fatal defect would have been discovered and corrective measures ordered. Under the jurisprudence of Ledoux, supra, and the cases that follow it, judgments signed by a judge other than the hearing judge are invalid and not final. Application of this rule is of utmost importance here where the hearing judge did not rule on the matter and where the purported judgment was signed by a judge who did not hear luthe matter or even review the record. We find that such judgments are not final judgments.
While there are exceptions allowing a judge who did not hear a matter to sign a judgment, none apply here. Under La. C.C.P. art. 253.3, a duty judge is permitted to hear and sign specified orders and judgments, including certain uncontested matters and unopposed judgments recognizing heirs or legatees and sending them into possession. It does not appear that Judge Fallin signed the judgment as duty judge. The record shows that the judgment and accompanying letter from Stewart were sent to Judge Fallin, who had signed some orders in the Bailiff succession matter but had not conducted the hearing on December 16, 2004. Also, the Bailiff succession pleadings and minutes show that the matter was not unopposed. For this reason as well, the signing by Judge Fallin was not authorized under La. C.C.P. art. 194, which provides for the signing of specified orders and judgments in chambers. Nor was this a case involving a successor judge. See La. R.S. 13:4209.
CONCLUSION
For the reasons explained in this opinion, we find that no final judgment has been rendered in the Bailiff succession proceeding. In light of this finding, we vacate the trial court’s judgment and remand for further proceedings. Costs of appeal are assessed against the defendant, Claude H. Bailiff, Jr.
VACATED and REMANDED.

. For identification purposes, the immovable property that is the subject of the Bailiff succession proceeding is described as follows: